## CLAPP v. MILLER.

No. 5508.   Opinion Filed February 29, 1916.

(156 Pac. 210.)

1. **ACKNOWLEDGMENT—Notaries—"Public Officer"—Ministerial Act.** A notary public is a "public officer," and his act in taking an acknowledgment to a deed or mortgage and certifying to the same is a ministerial act, and not a judicial one.

2. **SAME—Negligence of Notary—Liability.** And in so doing, it is the duty of such notary public to exercise reasonable care and prudence to ascertain the truthfulness of that to which he certifies, and if he fails so to do he is liable to any one damaged, if his negligent act is the proximate cause of the damage.

3. **SAME—False Certificate—Pleading—Burden of Proof.** A petition which charges that a mortgage was a forgery and the certificate of the notary thereto acknowledging the same was false and untrue, states a cause of action against the notary, and if established by the evidence, it then becomes the notary's duty to show he used reasonable care and skill in certifying to the same.

4. **LIMITATION OF ACTIONS—Action Against Notary Public— Dismissal—Renewal.** A cause of action against a notary public upon his common-law liability is barred within three years, but where an action is commenced within the three years and has been dismissed without being heard upon its merits and plaintiff institutes another suit on the same cause of action within one year after such dismissal, the same is not barred by the statute of limitations.

(Syllabus by Hooker, C.)

*Error from Superior Court, Pottawatomie County; Geo. C. Abernathy, Judge.*

Action by L. W. Clapp against E. W. Miller. Judgment for defendant, and plaintiff brings error. Reversed.

*Stanard, Wahl & Ennis,* for plaintiff in error.

*Blakeney & Maxey,* for defendant in error.

Opinion by HOOKER, C. In the petition filed in this cause in November, 1911, it is charged that the defendant in error, in June, 1908, was a duly qualified notary public in and for Pottawatomie county, Okla., and that on said date, as said notary public, he certified an acknowledgment to a certain mortgage as having been executed and acknowledged before him by Dan Brown and James Millet, which mortgage was on certain real estate in Seminole county, to one C. G. Pitman, who, on the ——— day of July, 1908, sold and assigned the same to the plaintiff in error, and that the plaintiff in error relied upon said certificate as true and genuine, and parted with his money upon the faith thereof; that said certificate was false and forged, and that said mortgage was not the act or deed of the said Dan Brown or Jas. Millet, nor did the said Dan Brown and said Jas. Millet, or either of them, appear before the said defendant in error and acknowledge said mortgage. It is further alleged that the plaintiff in error, after he bought said mortgage, instituted

suit thereon in the proper county to foreclose the same, and that the said Dan Brown and Jas. Millet set up as defense to that action that the mortgage was false and a forgery, and that the defendant in error knew of the pendency of the said suit, and the defense being made by Brown and Millet; that upon the trial of said cause the court sustained the defense of said Brown and Millet and ordered said mortgage canceled; that the mortgage lien, if same had been true and genuine, was of much greater value than the amount of the mortgage; that suit was filed on May 17, 1911, in Jefferson county. Okla., against the defendant in error on the cause of action set forth herein; and that summons was issued and served upon said defendant in error and said action was dismissed by the court over the objection of the plaintiff on September 6, 1911, without a trial on its merits. A demurrer to this petition was sustained by the lower court, and, plaintiff in error declining to plead further, his petition was dismissed, and he has appealed to this court.

This appeal involves two questions: First, does the amended petition state a cause of action? Second, does it appear from the face of the petition that the cause of action, if any, is barred by the statute of limitations? It is apparent from the pleading that the defendant in error purchased the note and mortgage purporting to have been executed by Dan Brown and James Millet on certain real estate in Seminole county, which mortgage purported to have been acknowledged before the defendant as a notary public. The allegation is that the certificate appended to the mortgage was false and untrue, and that the plaintiff in the purchase of the note and mortgage relied upon the validity and truthfulness of the certificate, and that by reason of the fact that this certificate was false and

forged he has been damaged in the full amount of the note, as the property named in the mortgage was of much greater value than the face of the note. So, then, the question is presented whether the plaintiff in error, relying upon the genuineness of the certificate of acknowledgment thus made by the defendant in error, he having purchased the note and mortgage, believing it to be true and genuine, is entitled to maintain this suit and recover damages against the defendant in error for the damages caused to him thereby. It is apparent that this action is not brought upon the bond of the notary public, but upon his common-law liability as a public officer for misfeasance or nonfeasance in office. It is no longer a disputed question that a notary public is a public officer, and the rule is established in this state that the act of a notary public in taking an acknowledgment to a deed, mortgage, or other instrument is purely ministerial, and in nowise judicial. See *State National Bank v. Mee*, 39 Okla. 775, 136 Pac. 758. With respect to officers exercising ministerial powers the rule of law is well settled that where an individual sustains an injury by the malfeasance, misfeasance, or nonfeasance of such an officer, acting or omitting to act contrary to his duty, the law gives redress to the injured person by an action for damages. The officer is liable for nonfeasance—that is, for his omission to do his duty—only to a person who has a special interest in the performance of that duty, as where the sheriff, or other officer having corresponding function, fails to fulfill the directions of the process delivered to him, in which case he is liable only to the party interested in the execution of the process. But for misfeasance or negligence in the performance of his duty and also for malfeasance or excess or abuse of his power, he is liable

to any person who sustains injury thereby.  See Throop on Public Officers, sec. 724.  The same author, in section 726, says:

"But an officer owes to every individual the duty of performing his official acts with due care, and he is consequently liable to any individual who is injured in person or in property by reason of his negligence in performing a ministerial act."

The extent of the liability of a notary public for making a false or defective certificate of acknowledgment is not the same in all the states, for the liability in some states is fixed by statute, and in others it is held that the act is a judicial one, and therefore the notary cannot be liable, unless he acts corruptly or maliciously; but in this state, after a careful review of the authorities, we believe the rule to be that a notary public is liable, if he acts maliciously or corruptly, carelessly or negligently, in the performance of any duty imposed upon him, to any one injured as the proximate result of said act.  In support of this proposition we cite Ruling Case Law, sec. 103:

"*Foundations of Liability.*—If an officer in taking and certifying an acknowledgment acts with the care and diligence that reasonably prudent and cautious persons exercise under like circumstances, he fully performs the duty imposed upon him and complies with the terms of his bond and oath of office.  No legal liability can grow out of his act.  In short, his liability is not that of an insurer. If he is to be held accountable at all it must be on the ground of negligence, or malice, or corruption."

Section 104:

"*Character Ascribed to Officer's Acts as Determining Liability.*—A disagreement among the authorities respecting the character in which the officer acts, whether in legal theory he act judicially or ministerially, has been adverted

to in another place. And 'this much-disputed question is determined by some courts to be of importance in this connection. It is settled that if the duty of a public officer is certain, absolute, and imperative, involving merely the execution of a set task—that is, if the duty is simply ministerial, he is liable for damages to any one who may have sustained an injury by reason of negligence in the performance of duty. On the other hand, if an officer's duties are discretional, to be performed in accordance with what his judgment dictates, he is said to act judicially, and is deemed not to be accountable to any individual by reason of the performance of his duty. And so judges of courts are held to be not liable in damages for acts within their discretion, even if they act corruptly or oppressively, being in such cases impeachable only. Such being the status of judicial and ministerial officers, some courts have held that officers empowered to take acknowledgment enjoy the judicial privileges and are not to be held accountable, unless they act with malicious, impure, or corrupt motives. The decided weight of authority, however, has repudiated this view, holding that an officer who negligently makes a defective or untrue certificate is liable on his official bond, together with his surety, for any damages resulting from his negligent act. Where the acknowledgment is taken by a notary, as a great majority of acknowledgments are taken, it seems impossible, in harmony with other principles of law, to escape the conclusion that the officer may be held liable."

The limit of liability of the officer being fixed, the question presents itself to us in this case as to whether this petition is sufficient to state a cause of action against the defendant in error, inasmuch as it does not allege that the notary in taking the acknowledgment complained of acted maliciously, corruptly, carelessly, or negligently. Upon an examination of the petition, we find that it alleges that the certificate was false and untrue; that the parties who purported to have appeared before the de-

fendant in error as notary public did not so appear and did not execute the same, but that the mortgage was forged and that the certificate of acknowledgment thereto was, as stated, false and untrue. We are of the opinion that this states a cause of action, and that the plaintiff in error would be entitled to recover against the notary public upon establishing this state of fact, unless the notary public could show that he was not guilty of negligence or carelessness in making this certificate, or in taking this acknowledgment. While the law does not make him an insurer, it does require that he should exercise reasonable and ordinary care and precaution to ascertain the truthfulness of that which he certifies, and the allegation of this petition states a cause of action, and if sustained by the evidence against him, places upon him the burden of proving and establishing that he exercised that degree of care and diligence that the law requires of him. In support of this proposition numerous authorities could be presented, but a well-reasoned case is that of *Commonwealth v. Johnson*, 123 Ky. 437, 96 S. W. 801, 124 Am. St. Rep. 368, 13 Ann. Cas. 716, and we especially call attention to the language of the court as follows:

"We cannot agree with appellant's claim that the clerk is liable because his certificate is untrue; that he is an insurer of the identity of persons to execute conveyances. If the county clerk, in taking such acknowledgments, is to be charged with such a responsibility and held liable for all losses, it matters not how careful and diligent he may be, then it would be extremely difficult to get an intelligent person to accept the office. It is conceded that the clerks in this state, in taking the acknowledgment of conveyances, act in a ministerial * * * capacity. If they acted in a judicial capacity, of course, they would not be responsible for a mere error of judgment; but, acting in a ministerial capacity, they are re-

sponsible for their errors unless they can show that they occurred notwithstanding the use of reasonable care and diligence on their part to prevent same. * * * There is no case which we have been able to find which supports the contention that the clerk must know at his peril every man and woman who acknowledges a conveyance before him; but on the contrary the authorities are to the effect that, if a clerk, in taking an acknowledgment, exercises that diligence which a reasonably prudent and cautious man would exercise under like circumstances, he performs faithfully the duties of his office. * * * In our opinion, when the appellant proved that the clerk * * * took the acknowledgment of this woman, the imposter, as Mrs. S., then a *prima facie* case of negligence was made out against the clerk, and it devolved upon him to show that his deputy, in taking the acknowledgment, used care and diligence to prevent the fraud and imposition."

Of course a liability of the notary must be the proximate cause of injury, and this is a question of fact to be determined from the evidence.

We now come to the second proposition, as to whether the petition, on its face, shows that the cause of action is barred by the statute of limitations. It is alleged in the petition that the acknowledgment was taken in June, 1908, and this cause of action was filed in November, 1911, which was more than three years after the acknowledgment was taken; but it is further alleged that on May 17, 1911, a suit was filed upon this same cause of action in Jefferson county, Okla., the same being the county of the residence of the defendant in error, and that the suit was dismissed by the court over the objection of the plaintiff in error on September 6, 1911, without a trial on its merits, and it is claimed, inasmuch as the cause of action was first instituted before the statute of limitations of three years, as provided by section 4249 of Rev.

Laws 1910, had expired, and since this suit was not heard upon its merits, that section 4662 of Rev. Laws 1910, which provides, in substance, "if any action be commenced within due time and a judgment thereon for the plaintiff be reversed or if the plaintiff fail in such action otherwise than upon the merits and the time limited for the same shall have expired, he may commence a new action within one year after the reversal or failure," will prevent this cause of action from being barred by the statute of limitations. It must be conceded that if the statute conferring a right to sue or creating a cause of action limits the time within which the action must be brought, then any action instituted after that time has expired is barred by the statute of limitations, and section 4662, Rev. Laws 1910, above quoted, would not prevent the operation of the statute; but the cause of action here is based upon a common-law liability, and not upon any statutory right. In other words, there is no statute creating the cause of action, but the plaintiff in error is pursuing a remedy and a right independent of the statute; and while section 4249 of Rev. Laws 1910 limits the time within which his action may be brought to three years, yet that statute does not create his right, and we are of the opinion that under the allegations of the petition section 4662, above quoted, will prevent this cause of action from being barred by the statute of limitations. See *Wilson v. Wheeler*, 28 Okla. 726, 115 Pac. 1117; *Myer v. Church*, 11 Okla. 544, 69 Pac. 874; *Hatchett v. Hebeisen*, 16 Okla. 223, 82 Pac. 826; *Anthony Inv. Co. v. Law*, 62 Kan. 193, 61 Pac. 745; *Knox v. Henry*, 8 Kan. App. 313, 55 Pac. 668; *Ball v. Biggam*, 6 Kan. App. 42, 49 Pac. 678; 25 Cyc. 1313 to 1324; 33 Cent. Dig., Limitation of Actions, 533-566.

We recommend that the judgment of the lower court be reversed.

By the Court: It is so ordered.